UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

```
*  *  *  *  *  *  *  *
                     *
TRANS AMERICAN BROKERAGE, INC.,   *
                     *
         Petitioner,  *
                     *
     v.              *    Case No.  02-CV-3810
                     *
MRS. SMITH'S BAKERIES, INC.,      *
                     *
         Respondent. *
                     *
*  *  *  *  *  *  *  *
```

**MEMORANDUM OF LAW OF PETITIONER
TRANS AMERICAN BROKERAGE, INC. IN OPPOSITION TO
MOTION OF RESPONDENT MRS. SMITH' BAKERIES, INC.
TO VACATE ARBITRATION AWARD**

Petitioner, Trans American Brokerage, Inc. (hereafter referred to as "TAB"), by its attorneys Duane Morris LLP, respectfully submits this Memorandum of Law in opposition to the Motion of respondent, Mrs. Smith's Bakeries, Inc. (hereafter referred to as "MSB"), to Vacate Arbitration Award.

**I.    INTRODUCTION**

MSB contends that this Court should vacate the Final Arbitration Award in the underlying arbitration (the "Award") because that the Arbitrator acted in "manifest disregard of the law" and because the Award is "fundamentally irrational." However, MSB fails to make the legally required showing that the Arbitrator in the underlying arbitration recognized the applicable law, and yet intentionally chose not to follow that law. Instead, MSB merely argues that the Arbitrator was "wrong" in connection with the Arbitrator's choice of law analysis and in

1

the Arbitrator's interpretation of the law of the state of Georgia on one or more issues of contract law. Numerous decisions within this district make it clear beyond any doubt that arguments of the type now advanced by MSB regarding the alleged "legal error" by an arbitrator are simply not an appropriate basis for vacating an arbitration award.

Moreover, the same decisions make it perfectly clear that an arbitration award cannot be vacated on the grounds that it is "fundamentally irrational" if the court can find *even a colorable justification* to confirm the award. When an arbitration award is based on a contract, the award cannot be vacated on the grounds that it is "fundamentally irrational" if the arbitrator's interpretation of the contract can in any rational way be derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention. The Award here easily meets this *de minimis* requirement.

For all the reasons previously set forth in TAB's Petition to Confirm Arbitration Award and Memorandum in Support thereof, and for all the reasons set forth below, MSB's Motion to Vacate should be denied.

## II. DISCUSSION

### A. MSB Has Not Met Its Burden of Establishing that the Arbitrator Recognized but Ignored the Law

MSB contends that the Arbitrator is guilty of "manifest disregard of the law" because he allegedly refused to apply Georgia law *alone* to the Distributor's Agreement as MSB claims is required by applicable choice of law rules. (MSB Brief, at 12) MSB further contends that the Arbitrator also erred in the manner in which he interpreted Georgia law regarding the formation of the contract and the award of lost profit damages to TAB.

In order to prove a "manifest disregard of the law," however, MSB must prove far more than that the arbitrator misinterpreted the law (which, of course, TAB does not concede in the first place). Instead, MSB must also show that (1) the law was well defined and explicit; (2) the law was clearly applicable; and (3) the arbitrator nonetheless simply chose to ignore the law. Ruggiero v. A.R. Baron & Co., Inc., Civil Action Misc. No. 95-0297, 1996 U.S. Dist. LEXIS 4745, *4 n.2 (E.D. Pa. April 12, 1996) (Hutton, J). "'[M]anifest disregard of the law' encompasses situations in which it is evident from the record that the arbitrator recognized the applicable law, and yet chose to ignore it." Aetna Casualty and Surety Co. v. Dravo Corp., Civil Action No. 97-149, 1997 U.S. Dist. LEXIS 11648, *3 (E.D. Pa. July 30, 1997). Thus, the party seeking to vacate an arbitration award must make some showing, other than the result obtained, that the arbitrators knew the law and expressly disregarded it. Id. at *4-*5.

This Court has consistently refused to invalidate arbitration awards under the "manifest disregard" standard where the basis of the claim of "manifest disregard" is merely a claim that the arbitrator made some "legal error."[1] For example, in Aetna Casualty, 1997 U.S. Dist. LEXIS

---

[1] In fact, there are scores of cases in which this Court has confirmed arbitration awards. See, e.g., Olick v. Nikles, No. 93-1495, 2002 U.S. Dist. LEXIS 5448 (E.D. Pa. March 28, 2002) (Green, J.); Jeffrey M. Brown Assocs. v. Allstar Drywall & Acoustics, Inc., No. 02-MC-15, 2002 U.S. Dist. LEXIS 5768 (E.D. Pa. Apr. 2, 2001) (Joyner, J.); Hruban v. Steinman, No. 00-4285, 2001 U.S. Dist. LEXIS 4906 (E.D. Apr. 19, 2001) (Robreno, J.); Smith v. PSI Servs. II, Inc., No. 97-6749, 2001 U.S. Dist. LEXIS 278 (E.D. Pa. Jan. 16, 2001) (Waldman, J.); Mathers v. Sherwin-Williams Co., Inc., No. 97-5138, 2000 U.S. Dist. LEXIS 3716 (E.D. Pa. March 27, 2000) (Broderick, J.); Janney Montgomery Scott, Inc. v. Fiascki, No. 99-4307, 2000 U.S. Dist. LEXIS 6524 (E.D. Pa. May 15, 2000) (Dalzell, J.); Perna v. Barbieri No. 97-5943, 1998 U.S. Dist. LEXIS 9387 (E.D. Pa. Jun. 25, 1998) (Ludwig, J.); Maiocco v. Greenway Capital Corp., No. 97-MC-0053, 1998 U.S. Dist. LEXIS 836 (E.D. Pa. Jan. 29 1998) (Newcomer, J.); Aetna Casualty and Surety Co. v. Dravo Corp., No. 97-149, 1997 U.S. Dist. LEXIS 11648, *3 (E.D. Pa. July 30, 1997) (Brody, J.); Ruggiero v. A.R. Baron & Co., Inc., No. 95-0297, 1996 U.S. Dist. LEXIS 4745 (E.D. Pa. April 12, 1996) (Hutton, J); Nationwide Mut. Ins. Co. v. Meyer, No. 95-MC-0171, 1995 U.S. Dist. LEXIS 14069 (E.D. Pa. Sept. 26, 1995) (Kelly, J); Prudential Sec.

11648, the respondent sought to have an arbitration award vacated under the "manifest disregard" standard on the grounds that the applicable statute of limitations unquestionably had expired before the petitioner had initiated the underlying arbitration. Id. at *2. In support of its claim of manifest disregard, the respondent pointed to the fact that both parties had briefed the statute of limitations issues for the arbitrators and that the arbitration award in favor of the petitioner contained no discussion of that issue. Id. at *5. Judge Brody ruled that "[f]rom this, I cannot conclude that the arbitrators clearly recognized and understood the law but chose to disregard it." Id. As Judge Brody explained, "[e]ven if I were to concur that [the petitioner's] statute of limitations had run at the time it initiated arbitration, respondents must demonstrate that the arbitrators clearly understood the law and reached a contrary conclusion in spite of it before it can properly vacate the award." Id. at *6 Judge Brody also noted that the Court had "not uncovered any circuit court case that has vacated an arbitration award or affirmed a district court's vacation of an arbitration award under the 'manifest disregard of the law' standard." Id.

More recently, in the case of Coltec Indus., Inc. v. Elliot Turbocharger Group, Inc., Civil Action No. 99-1400, 1999 U.S. Dist. LEXIS 13684 (E.D. Pa. Sept. 2, 1999) (Giles, C.J.), Chief Judge Giles considered a motion to vacate an arbitration award on the grounds very similar to those advanced here by MSB. In Coltec, the movant claimed that the arbitrator had manifestly disregarded the law in finding a "memorandum of understanding" between the parties to be an enforceable contract, because the memorandum did not satisfy the Uniform Commercial Code

---

v. Shaifer, No. 94-31, 1994 U.S. Dist. LEXIS 7325 (E.D. Pa. May 27, 1994) (Bechtle, J.); Kaplan v. First Options, No. 92-MC-210, 1992 U.S. Dist. LEXIS 14961 (E.D. Pa. Sept. 25, 1992) (Waldman, J.); Dean Witter Reynolds, Inc. v. Bork, No. 91-0392, 1991 U.S. Dist. LEXIS 11907 (E.D. Pa. Aug. 21, 1991) (Weiner, J.); Yorkaire, Inc. v. Sheet Metal Workers Int'l Ass'n, Local Union No. 19, 758 F. Supp. 248 (E.D. Pa. Aug. 17, 1990) (Dubois, J.).

4

("UCC") Statute of Frauds, id. at *17-18, and because the arbitrator used the wrong legal standard in determining damages, id. at *23-24. Chief Judge Giles rejected these contentions and confirmed the award, noting that the record was devoid of evidence that the arbitrator "subjectively understood" the law "but chose to ignore it." Id. at *25.

Significantly, MSB itself acknowledges that its burden of establishing "manifest disregard of the law" is "substantial." (MSB Brief, at 11)  As Chief Judge Giles noted in Coltec, MSB must show that the Arbitrator "subjectively understood" that a certain law was applicable, but simply chose to ignore that law. Id.  Therefore, in the context of this case, in order to demonstrate "manifest disregard of the law," MSB must come forward with evidence that the Arbitrator intentionally disregarded the law in order to rule for TAB *because he subjectively recognized and acknowledged that*:

1. Under applicable choice of law rules, Georgia law alone was applicable to this dispute and Pennsylvania law was not; and

2. Georgia law did not permit either a finding that a contract existed, or an award of damages for lost profits.

The issue now before this Court is quite straightforward because MSB does not even attempt to meet this very high standard. Nor could MSB do so. MSB concedes that, in the Award, the Arbitrator attempted to apply the law of both Pennsylvania and Georgia to the critical issues in the case, such as whether a contract was formed or whether an award of lost profit damages was appropriate.[2] Moreover, MSB concedes that the Award reflects the fact that the Arbitrator concluded that an Award in favor of TAB and against MSB was appropriate and

---

[2]     As discussed below, the Distributor's Agreement contained a choice of law clause permitting the Arbitrator to apply the law of the state of "Georgia and/or Pennsylvania."

5

supported by the law of *both* states. (See MSB Brief at 13, n.6) Significantly, MSB does not even challenge the Award under Pennsylvania law.

Instead, MSB argues only that the Arbitrator allegedly erred in the manner in which he conducted a choice of law analysis or in which he interpreted the law of Georgia. Quite obviously, such an argument falls woefully short of meeting the standard of "manifest disregard of the law." A claimed misinterpretation of the law is simply not a basis on which a court can vacate an arbitration award under the Federal Arbitration Act. See Ruggiero, 1996 U.S. Dist. LEXIS 4745 at *4 n.2. Indeed, this is something that the Court should not even *consider* in determining whether to enforce or vacate an arbitration award. Coltec, 1999 U.S. Dist. 13684, at *12.

### 1. The Arbitrator Did Not Intentionally Disregard Applicable Choice of Law Rules in order to Rule in Favor of TAB.

MSB first argues that the Arbitrator failed to conduct a proper choice of law analysis and that, under such an analysis, Georgia law alone, rather than Pennsylvania law, should apply because, according to MSB, Georgia had more significant contacts with the case. (MSB Brief, at 13-15). While TAB disputes that any error was made, even viewing MSB's argument in the light most favorable to it, MSB's argument in this regard are still based solely on alleged "legal error" by the Arbitrator. There is absolutely no showing by MSB that the Arbitrator recognized, but then intentionally failed to follow, the choice of law outcome advocated by MSB in order to find for TAB. Accordingly, MSB falls far short of meeting the strict standard for proving "manifest disregard of the law." See Ruggiero, 1996 U.S. Dist. LEXIS 4745 at *4 n.2.

Indeed, with respect to the issue of whether the Arbitrator even erred at all in applying the appropriate law to this dispute, it must be recognized that the choice of law provision in the

Distributor's Agreement permitted the Arbitrator to apply the law of *either* Pennsylvania *or* Georgia *or* the law of *both* states.  Paragraph 2(D) of the Agreement clearly states that Agreement was governed by the laws of the state of "Georgia ***and/or* Pennsylvania**." (Emphasis added)  It simply cannot be error for the Arbitrator to have applied Pennsylvania law given this language in the Distributor's Agreement.

Significantly, MSB concedes that Pennsylvania law supports the Arbitrator's rulings with respect to issues related to the formation of the contract and damages.  <u>See, e.g</u>. MSB Brief, at 12, n.5.  From this concession alone it is apparent that MSB has not, and cannot, demonstrate "manifest disregard for the law" because MSB itself acknowledges that the Award is supported by Pennsylvania law, which the Arbitrator was expressly permitted to apply by the terms of the Distributor's Agreement.

The Award expressly cited the choice of law provision in the Distributor's Agreement, and it is self-evident that the Arbitrator dutifully attempted to apply the law of both states to the dispute. (Interim Award at 3 & n.2)  Therefore, it is not surprising that the Arbitration Award does not contain the type of choice of law analysis now advocated by MSB because under the Distributor's Agreement no such choice of law analysis was required.

Certainly, the mere fact that the Arbitrator did not set forth a comprehensive choice of law analysis in the Award does not demonstrate that the Arbitrator was guilty of "manifest disregard of the law."  It is well-established that the mere fact that an arbitrator does not explain his reasoning does not demonstrate "manifest disregard." See <u>Coltec</u>, 1999 U.S. Dist. LEXIS 13684, at *16 ("Generally, there is no requirement that an arbitrator expressly explain his reasoning.  Accordingly, it is not reasonable to attempt to draw conclusions or inferences from

an arbitrator's not doing something that he was not obligated to do.") (internal citation omitted); Aetna Casualty, 1997 U.S. Dist. LEXIS 11684, at *4 ("Arbitrators are not required to provide express reasons for an arbitration award. Accordingly, the absence of an explanation does not signify that arbitrators acted in manifest disregard of the law.") (internal citation omitted).

Beyond that, MSB has entirely failed to establish that the selection of Georgia law under the choice of law analysis it argues the Arbitrator should have followed was of "such widespread familiarity, pristine clarity and irrefutable applicability that a court could assume the arbitrator[ ] knew the rule and, notwithstanding, swept it under the rug." Aetna Casualty, 1997 U.S. Dist. LEXIS 11648, at *5 (quoting Advest, Inc. v. McCarthy, 914 F.2d 6, 10 (1st Cir. 1990). Indeed, the choice of law analysis MSB suggests that the Arbitrator failed to apply involves a multi-factor test that is inherently highly subjective. See Griffith v. United Airlines, Inc., 416 Pa. 1, 203 A.2d 796 (1964). In fact, in the very decision in which the Pennsylvania Supreme Court first adopted the choice of law analysis now advanced by MSB, Chief Justice Bell, writing in dissent, decried the "confusion, uncertainty and conflict which the majority's new and flexible formula can and undoubtedly will create." Griffith, 416 Pa. at 29, 203 A.2d at 809.

Pennsylvania has many significant contacts with this case arising out of the fact that TAB was headquartered here at all relevant times. Thus, Pennsylvania has an obvious interest in seeing that the rights of businesses within its borders are enforced in disputes with citizens of other states. The contract was *not* entered into by the parties in Georgia (the parties signed the contract in Europe) and the contract was *not* to be performed in Georgia (MSB would have manufactured the pies in Oklahoma and shipped them to Philadelphia, where TAB was to take control of them and ship them to Europe, where they were to be distributed and sold). Indeed,

8

the *only* connection with Georgia was that MSB was headquartered there and some initial discussions between the parties occurred there. On the other hand, TAB was located in Pennsylvania, and part of the performance was to occur in Pennsylvania. Thus, a proper choice of law analysis would have identified that Pennsylvania had the more significant contacts with the contract and the parties than did Georgia, and therefore that Pennsylvania law – which MSB concedes fully supports the Award – was applicable.

> **2.     The Arbitrator's Interpretation and Application of Georgia Law on the Formation of Contracts and on Damages Is Not Subject to Review and Was Correct.**

In addition to all of the foregoing, MSB's "choice of laws" argument is actually a moot point, because MSB failed to demonstrate that the Arbitrator recognized that Georgia law prohibited the award in favor of TAB, but then intentionally disregarded that law in order to find in favor of TAB. To the contrary, it is clear from the Interim Award that the Arbitrator concluded that there were no material differences between Pennsylvania and Georgia law and that the Award was therefore consistent with the law of both states.[3]

The Arbitrator found that interpretation of the Distributor's Agreement "is governed by Article 2 of the Uniform Commercial Code, as adopted in Pennsylvania and Georgia," (Interim Award, at 2-3), and the Arbitrator then analyzed the question of whether the Agreement was an enforceable contract or merely an "agreement to agree" under general Uniform Commercial

---

[3] Moreover, as MSB acknowledges, the first step in a choice of law analysis is a determination of whether there exists a "true" conflict. By concluding that were no material differences between Pennsylvania and Georgia law, the Arbitrator effectively determined that no "true" conflict existed. Again, the Arbitrator's conclusion was not in "manifest disregard of the law."

Code principles which were *equally applicable under Georgia and Pennsylvania law*.[4] (See Interim Award, at 3-9)

MSB contends that, had the Arbitrator properly applied Georgia law, the Arbitrator would have found the Distributor's Agreement to be an unenforceable "agreement to agree." (See MSB Brief, at 15-17)  In support of this contention, MSB relies exclusively on two Georgia cases, Wells v. H.W. Lay & Co., 50 S.E.2d 755 (Ga. App. 1948), and Drug-Line, Inc. v. Sero-Immuno Diagnostics, 458 S.E.2d 170 (Ga. App. 1995).  First, the Wells case was not decided under the UCC, which the Arbitrator here determined was applicable.  Second, the Drug-Line case is factually distinguishable from this case because, in Drug-Line, the court determined that there was no meeting of the minds between the parties, and thus no enforceable contract, see Drug-Line, 458 S.E.2d at 171, whereas here the Arbitrator specifically found that there was extensive evidence – including admissions from MSB witnesses – that the parties had intended to create a binding contract.[5]  (See Interim Award, at 3-5)

---

[4]      The Arbitrator also rejected MSB's so-called "impossibility defense" under *both Pennsylvania and Georgia law* and concluded that an oral extension of the Distributor's Agreement claimed by TAB was unenforceable under *both Pennsylvania and Georgia law*.  (See Interim Award, at 9-11, 14-15).

[5]      MSB claims that the parties' subsequent agreements regarding certain aspects of the European Project, such as the flavors of pies that would be included in the initial European launch, constitute oral modifications of the Distributor's Agreement which run afoul of the UCC statute of frauds. (MSB Brief, at 18)  This is similar to the statute of frauds argument Chief Judge Giles rejected as a basis for vacating an arbitration award in Coltec.  1999 U.S. Dist. LEXIS 13684 at *17-18.  Moreover, as MBS acknowledges, in the Award the Arbitrator identifies numerous admissions by MSB's own employees regarding the existence of such oral agreements.  Because the UCC expressly recognizes admissions to be exceptions to the statute of frauds, see UCC § 2-201(c)(3), MSB's statute of frauds claim is meritless.

10

Accordingly, it would have been entirely reasonable for the Arbitrator to conclude that the cases cited by MSB were wholly distinguishable. Moreover, the Arbitrator expressly concluded that he was not required to decide whether there was any conflict between Georgia and Pennsylvania law on this point because "the testimony from witnesses for both MSB and TAB establishes that the parties *actually did* reach agreement on 'terms and conditions' of sale . . .." (Interim Award, at 5) As such, it is manifestly obvious that there is no factual support for MSB's claim that the Arbitrator acted in "manifest disregard of the law."

While attempting to portray its claim in terms of the Arbitrator's "manifest disregard of the law," MSB *real* contention is that the Arbitrator's analysis was simply "flawed." (See MSB Brief, at 17) Of course, even if MSB was right (which is not the case), this Court cannot vacate an arbitration award on the grounds that the arbitrator's analysis is flawed. See Ruggiero v. A.R. Baron & Co., Inc., Civil Action Misc. No. 95-0297, 1996 U.S. Dist. LEXIS 4745, *4 n.2 (E.D. Pa. April 12, 1996) (Hutton, J.); Smith v. PSI Services II Inc., Civil Action No. 97-6749, 2001 U.S. Dist. LEXIS 278, *5-*8 (E.D. Pa. Jan. 12, 2001) (noting that "misapplication of the law to the facts is insufficient to constitute a manifest disregard of the law" and confirming arbitration award notwithstanding the fact that "[t]he court believes that the arbitrator misapplied the law . . . to the facts as she found them"). In fact, as Chief Judge Giles recognized in Coltec in circumstances analogous to those here, a district court "does not review the [arbitration] award to ascertain whether the arbitrator has applied the correct principles of law." Coltec, 1999 U.S. Dist. 13684, at *12.

MSB similarly challenges the Arbitrator's analysis of Georgia law regarding the damages awarded to TAB. In the Interim Award, the Arbitrator determined that "[b]oth Pennsylvania and

11

Georgia follow the rule which provides that expected lost profits damages may be awarded, and that the only limitation is that such damages must be established with reasonable certainty." (Interim Award, at 21)  MSB now contends that "[t]he Arbitrator is wrong" with regard to Georgia law on recovery of lost profits.  (MSB Brief, at 18)

Here again, the basis for MSB's claim of "manifest disregard of the law" is merely MSB's belief that the Arbitrator's interpretation of Georgia law was wrong.  Although MSB's contention about the Arbitrator's claimed "error" is wrong, the pertinent consideration is that misinterpretation of the law is simply not a basis on which a court can vacate an arbitration award under the Federal Arbitration Act.  See Ruggiero, 1996 U.S. Dist. LEXIS 4745 at *4 n.2.  Moreover, this is not even something that the court can consider in determining whether to enforce or vacate an arbitration award.  Coltec, 1999 U.S. Dist. 13684, at *12.

MSB offers no evidence establishing that the Arbitrator recognized that an award of lost profits on the facts as he found them would have been improper under Georgia law.  Indeed, it is clear from the language of the Interim Award that the Arbitrator believed that Georgia law equally supported an award of lost profits damages here.  Under these circumstances, MSB has failed to meet its burden of showing "manifest disregard of the law" by the Arbitrator.  See Coltec, 1999 U.S. Dist. 13684, at 25 (holding that the party challenging an arbitration award must identify evidence in the record showing that the arbitrator subjectively understood, but chose to ignore, law that was obviously applicable).

Beyond the foregoing, MSB's contention that Georgia law would deny recovery of lost profits by TAB is wrong.  Even if MSB were correct in its contention that a business may

recover lost profits under Georgia law only if the business has a track record of profitability,[6] the Arbitrator's award of lost profits to TAB satisfies this standard. While MSB claims that "TAB never attempted to establish the 'track record' required by Georgia courts," (MSB Brief, at 19), MSB ignores the fact that TAB's tax returns and the financial statements for TAB's European operations were admitted into evidence and that these documents demonstrated that TAB had been a profitable business for a number of years leading up to its entry into the Distributor's Agreement with MSB. Further, TAB had presented substantial evidence of its established track record of successfully introducing many products to Europe.

In the final analysis, MSB is asking this court to determine that the Arbitrator's interpretation of the law pertaining to (1) the enforceability of the Distributor's Agreement, and (2) TAB's entitlement to lost profits damages arising from MSB's breach thereof, was in error. Not only did the Arbitrator not err, but the pertinent consideration is that "manifest disregard of the law" requires more than a showing that an arbitrator's interpretation of the law was wrong, or that the arbitrator reached the wrong result. MSB must show that the Arbitrator *subjectively recognized* that a particular legal principle applied, but nonetheless chose to ignore it. Even giving the benefit of any doubt to MSB on its argument that the Arbitrator committed some

---

[6]    MSB does not discuss, and fails to even mention, the case of <u>Sterns' Gallery of Gifts, Inc. v. Corporate Property Investors, Inc.</u>, 337 S.E.2d 29 (Ga. App. 1985), in which the court noted that the plaintiff could have recovered lost profits damages notwithstanding the fact that the business had never turned a profit based on the pattern of diminishing *losses* experienced by the business, <u>Id.</u> at 34-35, or the case of <u>Roboserve, Ltd. v. Tom's Foods, Inc.</u>, 940 F.2d 1441 (11th Cir. 1991), in which the court noted that the "track record" contemplated by Georgia law "can be a history of profits, *or a pattern of diminishing losses.*" <u>Id.</u> at 1452 (emphasis added).

error, MSB has still failed to make a showing of "manifest disregard of the law" by the Arbitrator.

### 3. The Arbitrator's Interpretation and Application of Pennsylvania Law on the Discounting of Damages is Not Subject to Review and Was Correct.

MSB also takes issue with the fact that the Arbitrator determined, based on the principles set forth in Kaczkowski v. Bolubasz, 491 Pa. 561, 421 A.2d 1027 (1980), that TAB's lost profits damages should not be discounted to "present value." Once again, MSB's claim amounts to nothing more than a contention that the Arbitrator misapplied or misinterpreted the law. Significantly, MSB offers no evidence to show that the Arbitrator understood that it would be inappropriate not to discount TAB's damages, but nonetheless proceeded not to discount TAB's damages.

In fact, the Arbitrator's decision not to discount to "present value" TAB's lost profits damages was entirely consistent with Pennsylvania law. MSB has cited no cases to this Court, and it cited none to the Arbitrator below, to support its argument that the "total offset rule" adopted by the Pennsylvania Supreme Court in Kaczkowski does *not* apply in cases involving lost profits by a business. Kaczkowski itself expressly states that whether the so-called "total offset" rule should be applied should be determined on a case-by-case basis. Id. at 1036 n.21. The reasoning of the Pennsylvania Supreme Court in Kaczkowski applies equally to a claim for lost profits by a business as to lost earnings by an individual. Inflation effects both a company's sales and an individual's earnings and offsets any discounting. The Tenth Circuit recognized this very point in Bloomfield Financial Corp. v. National Home Life Assurance Co., 734 F.2d 1408 (10th Cir. 1984), where it held that under Pennsylvania law the "total offset" rule

announced in <u>Kaczkowski</u> applies to lost commissions damages resulting from breach of a commercial contract. <u>Id.</u> at 1413. Regardless, it was within the Arbitrator's discretion to determine what interest rate to apply and whether the damages awarded should be discounted to present value. <u>See, e.g.</u>, <u>Personnel Data Systems, Inc. v. Openplys Holdings Pty. Ltd.</u>, No. 00-MC-166, 2001 U.S. Dist. LEXIS 403, *12 (E.D. Pa. Jan. 18, 2001).

    **B.    MSB Has Not Met Its Burden of Showing that the Award is "Fundamentally Irrational"**

MSB contends that the Arbitrator's analysis was "flawed" because the Arbitrator adopted a damages model based on the parties' joint pre-litigation projection that they would have achieved at least a 2% share of the frozen dessert market in Europe by 2005. From this, MSB argues that the Award is "fundamentally irrational." MSB's position is not supported by the facts or the law.

A court cannot vacate an arbitration award on the grounds that it is "fundamentally irrational" if there is any colorable justification upon which to confirm the award. <u>Coltec</u>, 1999 U.S. Dist. LEXIS 13684, at *11. The Award here easily satisfies this "singularly undemanding" standard of review. <u>Id.</u> at *14.

In the Interim Award, the Arbitrator described in great detail his analysis of TAB's lost profits damages. In that discussion, the Arbitrator clearly indicated that the basis of TAB's lost profits damages award was the parties' joint pre-litigation projection that they would achieve a 2% share of the frozen dessert market within the top 5 European markets. (Interim Award, at 16-21) MSB itself admits as much. (MSB Brief, at 23) Accordingly, the Court need go no further in order to reach the conclusion that the Award is not "fundamentally irrational," for

plainly a "colorable justification" exists for the amount of lost profits award by the Arbitrator, and MSB has conceded as much.

Instead, MSB invites the Court to look beyond whether the award has a "colorable justification," which it clearly does, and revisit the Arbitrator's factual determination that the parties' 2% projection related to the entire European frozen dessert market, and not to the "non-ice cream" portion of that market, as MSB now contends. (MSB Brief, at 24) As a preliminary matter, it is not appropriate for this Court to entertain MSB's claim that the Arbitrator made an erroneous factual determination. See Coltec, 1999 U.S. Dist. LEXIS 13684, at *12 ("Importantly, this court does not sit in review of the merits of the arbitral decision, or to hear claims of factual . . . error by an arbitrator.") (internal citation omitted); Ruggerio, 1996 U.S. Dist. LEXIS 4745, at *11 ("This court . . . is forbidden to reweigh the evidence and cannot reconsider the merits of the case.").

Moreover, even were this Court to inquire, as MSB requests, into whether the Arbitrator made a factual error, the Court would discover that the Arbitrator did not make the error which MSB claims he did. As noted by the Arbitrator on page 20 of the Interim Award, the parties' joint market plan (TAB Ex. 38, a copy of which is attached hereto as Exhibit A) in which the 2% projection originally appeared states: "TAB and MSB together aim to achieve a 2% overall market share *of the frozen dessert category*." (p. T01171) (emphasis added). TAB's expert witness testified regarding the size of the frozen dessert category and the record clearly reflects that the frozen dessert category included ice cream. Indeed, a market plan prepared by TAB states "The frozen desert category in the German market contains mainly Ice-cream and no pies." (MSB Ex. 10 at T01137, attached hereto as Exhibit B). A picture of an ice cream cone

16

appears in the joint market plan (TAB Ex. 38), right next to the calculation of the dollars spent in the frozen dessert category. This graphically demonstrates, contrary to MSB's present argument, that the parties knew and intended that the frozen dessert category in which they were projecting a 2% market share included ice cream. (p. T01168) The term "*other* frozen dessert category" does not even appear anywhere in that market plan.[7] In fact, there was absolutely no testimony in the record from any fact witness that the parties intended the 2% projection to refer only to a subset of the frozen desert category.[8] On the contrary, and as noted by the Arbitrator in the Interim Award, several witnesses *from both parties* acknowledged and endorsed the 2% projection "of the frozen dessert category" as set forth in TAB Ex. 38. (Interim Award, at 20-21)

    C.    <u>The New York Convention Governs these Proceedings</u>

MSB asserts in its Motion to Vacate that the New York Convention does not apply here because MSB and TAB are citizens of the United States. (MSB Brief, at 12 n.4) MSB also advances a similar position in its recently-filed Response to TAB's Petition to Confirm. MSB's contention that the Award is not a "non-domestic" award under New York Convention is incorrect.

---

[7] The *only* place that term appears is in a market report on the frozen desert market in Europe (the "Leatherhead Report" referenced by MSB) that was obtained by TAB's attorneys from a third party market data broker *after the initiation of litigation*.

[8] As the foregoing discussion makes apparent, MSB's contention that "[n]othing in the record . . . suggests that in discussing the two percent estimate, the parties intended to include ice cream in the potential market" is patently false. MSB made a similar argument to the Arbitrator in its Motion to Reconsider, and the Arbitrator rejected it out-of-hand. (<u>See</u> Award, at 1)

According to Section 202 of the Federal Arbitration Act, which implements the New York Convention, the Convention governs confirmation and enforcement of all "non-domestic" arbitral awards.  Under Section 202, an arbitral award arising out of a commercial legal relationship entirely between citizens of the United States is nonetheless a "non-domestic" award, and is within the purview of the New York Convention, whenever that relationship "involves property located abroad, or has some other reasonable relation with one or more foreign states."  9 U.S.C. § 202.

Lander Co., Inc. v. MMP Investments, Inc., 107 F.3d 476 (7th Cir. 1997), involved a situation substantially similar to the one here.  In that case, Chief Judge Posner ruled that the New York Convention governed confirmation of an arbitration award issued in the United States in an arbitration involving United States citizens, based on the fact that, as here, the dispute arose out of a distribution contract contemplating performance in a foreign country.[9]

Thus, under the Section 202 of the Federal Arbitration Act, as applied by the Seventh Circuit in Lander, here the New York Convention governs confirmation and enforcement of the Final Award, notwithstanding the fact that the parties to the underlying arbitration were both citizens of the United States, because the dispute arose out of a distribution contract by which TAB was to distribute MSB's products *in Europe*.  None of the cases cited by MSB hold to the contrary.

---

[9] In its Response to TAB's Petition to Confirm, MSB makes the utterly absurd contention that the Distributor's Agreement was not to be performed in Europe.  A simple review of the Agreement itself, which describes TAB's distribution responsibilities and identifies TAB's "territory" to be several countries in Europe, demonstrates the fallacy of MSB's contention.

Under Section 207 of the Federal Arbitration Act, "non-domestic" arbitral awards must be confirmed "unless [the court] finds one of the grounds for refusal or deferral of recognition or enforcement . . . specified in [the New York] Convention." 9 U.S.C. § 207.  See also M&C Corp. v. Erwin Behr GmbH & Co. KG, 87 F.3d 844 (6th Cir. 1996), noted in Lander, 107 F.3d at 480.  As explained in the Memorandum in Support of TAB's Petition to Confirm, none of the circumstances set forth in the New York Convention as a basis for refusal to recognize or enforce a "non-domestic" arbitral award is present here.  See 9 U.S.C. § 201 (New York Convention, Article V(1) and (2)); (TAB Brief, at 10-11).  As such, as an alternative basis for confirming the Award, the Court should determine that the New York Convention governs confirmation and enforcement of the Final Award and deny MSB's Motion to Vacate.

### III. **CONCLUSION**

For all of the foregoing reasons, and for all the reasons previously set forth by TAB in its Petition to Confirm, TAB respectfully requests that this Court deny MSB's Motion to Vacate, confirm the Final Award rendered in favor of TAB and against MSB, and enter the same as a judgment in favor of TAB against MSB.

Respectfully submitted,

DUANE MORRIS LLP

Dated: July 9, 2002

_____
Wayne A. Mack
John J. Soroko
J. Manly Parks
Duane Morris LLP
One Liberty Place
Philadelphia, PA 19103
215.979.1152/1125/1342

Attorneys for Petitioner
Trans American Brokerage, Inc.

PH2\663670.1